UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

DIAZ PABON OSVALDO,                    :
                                       :
            Plaintiff                  :
                                       :
      v.                               : CIVIL NO. 3:CV-05-155
                                       :
U.S.P. LEWISBURG WARDEN, et al.,       : (Judge Kosik)
                                       :
            Defendants                 :

**M E M O R A N D U M**

Diaz Pabon Osvaldo filed this <u>Bivens</u>[1] action pursuant to 28 U.S.C. § 1331 on

January 24, 2005.  He is currently confined at the United States Penitentiary at

Coleman, Florida.  Along with the complaint, he has submitted an appendix which

attaches copies of his grievances and responses thereto with regard to the claims

raised in the complaint.  This appendix will be considered as part of the complaint in

this action.[2]  The complaint concerns Osvaldo's previous confinement in the Special

---

[1] <u>See</u> <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>,
403 U.S. 388 (1971).

[2] It is well-established that in addition to the complaint, courts may consider
matters of public record, orders, exhibits attached to the complaint and items
appearing in the record of the case in disposing of a motion to dismiss under Rule

Management Unit (SMU) at the United States Penitentiary at Lewisburg (USP-Lewisburg), Pennsylvania.  Named as defendants are the Warden at USP-Lewisburg, the Northeast Regional Director of the Bureau of Prisons and the Director of the Bureau of Prisons.  In his complaint, Osvaldo raises several due process challenges to his placement in the SMU.  He contends that he was transferred from the Special Housing Unit to the SMU without first receiving a hearing, that his transfer was based upon an incident which occurred at a prior institution and for which he already completed his sanction, and that if he refuses to participate in the SMU program, he will receive an incident report or be required to remain in the SMU for a longer period of time.  Osvaldo also appears to contend that his confinement in the SMU violated his Eighth Amendment rights because the SMU has a "lockdown condition" to the extent that he was only permitted out of his cell for recreation one (1) hour per day and had restricted access to the commissary.  He also appears to allege a violation of the Eighth Amendment with regard to being transferred to the SMU in April of 2004, because he "already completed a disciplinary sanction imposed by the DHO with regard to an earlier incident report."

---

 12(b)(6).  See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994); Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990); Hughes v. Kostingo, 2006 WL 367890 at *2, (W.D. Pa. Feb. 15, 2006).

## I.    **Background**

On July 25, 2003, Osvaldo was found guilty by a Disciplinary Hearing Officer at USP-Lewisburg of committing the prohibited acts of Assault with Serious Injury and Possession of a Dangerous Weapon.  (Doc. 1, Appendix to Compl. at 10). Osvaldo has a history of disciplinary behavior, including five (5) findings that he committed the prohibited act of Possessing a Weapon.  Further, he has also held leadership positions within a BOP prison gang.

On September 4, 2003, Osvaldo was approved for placement into the Special Management Unit at USP-Lewisburg because he was unable to function and remain in the general population due to his behavior.  Such placement is authorized for inmates who have participated or played a leadership role in a Bureau recognized prison gang or who staff have determined present security concerns within the institution.  (Doc. 1, Appendix to Compl., 11/7/03 Response by Reg'l Director to Grievance.)  Placement in the SMU is designed to develop an inmate's skills necessary to co-exist with other inmates.  Inmates in the SMU may obtain a handbook containing information about the SMU but are not entitled to receive copies of paperwork with regard to their transfer into the unit.  (Id.)

Osvaldo claims that upon completing a period of disciplinary segregation in the Special Housing Unit at USP-Lewisburg, he was transferred into the SMU program. (Doc. 1, Compl. at 2.)  He contends that he was not provided with any paperwork

3

authorizing his placement there, and received no hearing.  Because he heard that an inmate's refusal to participate in the program would result in an incident report, Osvaldo states that he chose to participate in the program.  He argues, however, that the failure to provide him with a hearing and the service of additional disciplinary time in the SMU violated due process because he completed his disciplinary sanction in the SHU. He contends that he has been on lockdown status from 2001 to the present without reasonable cause, allegedly in violation of the Eighth Amendment.[3]

Pending are Plaintiff's motion requesting the court to "set up a subpoena or writ of habeas corpus ad testificandum to a deposition under oath before a stenographer or/and before the court" (Doc. 25) and a motion for order compelling discovery[4] (Doc. 45).  Also pending is Defendants' ripe motion to dismiss the complaint (Doc. 28), Plaintiff's motion for preliminary injunction (Doc. 39) and Plaintiff's Motion for Summary Judgment (Doc. 46).

## II.   Discussion

### A.   Motion to Set Up Subpoena/Writ of Habeas Corpus Ad Testificandum by Court

Plaintiff has filed a motion requesting the court to issue subpoenas, schedule depositions and order the government to assume the costs of these fees based upon

_____

[3]  It is clear in reviewing the complaint that Osvaldo was not transferred into the SMU until April of 2004.

[4]  This motion will be deemed withdrawn pursuant to M.D. Pa. Local Rule 7.5 due to Plaintiff's failure to file a supporting brief.

his <u>in forma pauperis</u> status.  (Doc. 25.)  He specifies various individuals whom he wishes to depose, under oath, including the Wardens/Administrators of the following Special Management Control Units: Arizona Department of Corrections, Pennsylvania Department of Corrections, and New Jersey Department of Corrections, as well as other "witness people".  (Doc. 25 at 2.) He appears to request that the court pay for the expenses associated with conducting this discovery because the SMU does not offer any employment whereby he can obtain money.  (Doc. 33 at 2.)

    For the following reasons the court will deny the instant motion.  In a civil rights action, the parties conduct their own discovery pursuant to the Federal Rules of Civil Procedure.  There are specific Rules which address the procedures for conducting depositions and issuing subpoenas.  The court customarily does not become involved with the discovery stage of a case unless a discovery dispute cannot be resolved by the parties.

    There is no indication that Plaintiff has attempted to conduct discovery on his own.  Further, the fact that he cannot afford the type of discovery he seeks does not require the court to fund his efforts.  Pursuant to 28 U.S.C. § 1915, Osvaldo has been granted <u>in forma pauperis</u> status for the purpose of filing fee payment.  Section 1915 does not provide that Plaintiff is exempt from the costs associated with discovery.[5]

---

[5]  As Defendants point out, this position is consistent with the Prison Litigation Reform Act, which modifies § 1915.

Furthermore, due to the disposition of Defendants' motion to dismiss which follows, there is no need to conduct discovery in this case.  Accordingly, the motion will be denied.

###    B.    Motion for Preliminary Injunction

Plaintiff seeks a preliminary injunction ordering his transfer from USP-Lewisburg due to their alleged inappropriate handling of his mail. (Doc. 39.)  While his submission is at times difficult to decipher, it appears that Osvaldo contends that USP-Lewisburg employees do not send out his mail as they should.  As a result, he contends that documents submitted to the court for filing appear on the docket several days later than they should.  Osvaldo concludes that Defendants, in mishandling his outgoing mail, are retaliating against him.

Preliminary injunctive relief is extraordinary in nature and should issue in only limited circumstances.  See American Tel. and Tel. Co. V. Winback and Conserve Program, Inc., 42 F.3d 1421, 1426-27 (3d Cir. 1994), cert. denied, 514 US. 1103 (1995).  Moreover, issuance of such relief is at the discretion of the trial judge. Orson, Inc. v. Miramax Film, Corp., 836 F. Supp. 309, 311 (E.D. Pa. 1993).  In determining whether to grant a motion seeking preliminary injunctive relief, courts in the Third Circuit consider the following four factors:

>     (1) likelihood of success on the merits;
>     (2) irreparable harm resulting from a denial of relief;
>     (3) the harm to the non-moving party if relief is granted; and
>     (4) the public interest.

United States v. Bell, Civ. No. 1:CV-01-2159, 2003 WL 102610, *2 (M.D. Pa. January 10, 2003)(J. Conner)(internal citations omitted).  It is the moving party that bears the burden of satisfying these factors.  (Id.).

Perhaps the most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted, the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered.  See Continental Group, Inc. v. Amoco Chems. Corp., 614 F.2d 351, 356 (3d Cir. 1980).  Irreparable injury is "potential harm which cannot be redressed by a legal or equitable remedy following a trial." Instant Air Freight, 882 F.2d at 801.  A court may not grant preliminary injunctive relief unless "[t]he preliminary injunction [is] the only way of protecting the plaintiff from harm." Id.  The relevant inquiry is whether the party moving for the injunctive relief is in danger of suffering the irreparable harm at the time the preliminary injunctive relief is to be issued.  Id.  Speculative injury does not constitute a showing of irreparable harm.  Continental, 614 F.2d at 359; see also Public Serv. Co. v. West Newbury, 835 F.2d 380, 383 (1st Cir. 1987).  "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Instant Air Freight, 882 F.2d at 801 (quoting Sampson v. Murray, 415 U.S. 61, 90 (1964)).  Of course, a prisoner lacks standing to seek injunctive relief if he is no longer subject to the alleged conditions he attempts to challenge.  See

<u>Weaver v. Wilcox</u>, 650 F.2d 22, 27 n. 13 (3d Cir. 1981)(prisoner's transfer from the prison moots claim for injunctive and declaratory relief with respect to prison conditions, but not claims for damages.)

The court first notes that Osvaldo does not contend the court fails to receive his filings.  Further, there is no evidence that any of the documents submitted by Osvaldo in this action have ever been rejected as untimely, and therefore, he has suffered no harm.  Even if he had suffered harm, he has adequate remedies at law and, therefore, cannot point to irreparable harm.  More importantly, Osvaldo is no longer confined at USP-Lewisburg.  Since the filing of this motion, he has been transferred to USP-Coleman.   For all of these reasons, his request for a preliminary injunction (Doc. 39) will be denied.

### C.    Plaintiff's "Motion for Summary Judgment"

On September 26, 2005, Plaintiff filed a document he titles "Motion Pursuant to Rule 56(f) of Federal Rules of Civil Procedure" (Doc. 46).  The Clerk's Office has docketed this motion as one for summary judgment.  After reviewing the motion, it is clear that it is neither a motion seeking summary judgment nor is it a Rule 56(f) motion since Defendants have not filed a motion for summary judgment in this case.[6]

---

[6] Federal Rule of Civil Procedure 56(f) is a device utilized whereby a party opposing a <u>pending</u> summary judgment motion submits affidavits establishing that the party cannot, for reasons stated, present by affidavit facts essential to justify that party's opposition.  The court, in considering the affidavits, may refuse the application for judgment or may order a continuance to permit affidavits to be

In the motion, Plaintiff actually requests the court to allow him to seek affidavits from inmates at other prisons to support the claims he raises in his complaint.  He contends that the BOP has a "regulation/policy" with regard to inmate to inmate correspondence.

In opposing Osvaldo's request, Defendants state that there are certain BOP procedures codified at 28 C.F.R. § 540.17, with regard to correspondence between inmates.  These procedures are incorporated into BOP Program Statement 5265.11.  (See Doc. 49, Exs. 1, 2.)  The outlined procedure provides that inmate to inmate correspondence is permitted, under certain circumstances, including where the other inmate is a party or witness in a legal action, but that inmates must request approval for the inmate-to-inmate correspondence from their respective Unit Managers.  (Id., Ex. 1 at 2.)  Approval of such requests are subject to various limitations as outlined in the BOP Program Statement.

Defendants maintain that there is no evidence that Osvaldo ever requested permission to correspond with any other inmates for purposes of this lawsuit.  His Unit Manager while at USP-Lewisburg has no recollection of any such request ever being submitted.  (Id., Ex. 1 at 2.)  Further, even if Osvaldo had made such a request, the BOP computerized index of all formal administrative remedies filed by inmates

---

obtained or depositions to be taken or discovery to be had or may make such other order as is just.  Plaintiff's motion is not properly made pursuant to Rule 56(f) as Defendants have not moved for summary judgment in this action.

reveals that Osvaldo never exhausted his available administrative remedies with regard to any denial of a request for inmate-to-inmate correspondence.  (Id., Ex. 3.) As such, it appears that Osvaldo never requested permission pursuant to BOP policy to have inmate-to-inmate correspondence, and, even if he did, he has failed to exhaust the denial of any such request.  Accordingly, his motion will be denied.[7]

### D.   **Defendants' Motion to Dismiss**

Defendants have filed a motion to dismiss Osvaldo's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 28.)  Defendants first maintain that the complaint fails to allege any particular wrongful conduct on behalf of the individual defendants.  Specifically, they argue Osvaldo fails to allege specific acts committed by the Warden at USP-Lewisburg, the Northeast Regional Director of the BOP and the Director of the BOP which violate his rights.  Defendants lump Osvaldo's claims into general assertions that his placement into the SMU and lack of a hearing prior to such placement violated his constitutional rights.

An alternative ground raised by Defendants in their motion to dismiss is that Osvaldo fails to state a claim of violation of his due process rights under the Constitution.  They specifically contend that the placement of an inmate in the SMU is not punitive in nature and that this court has denied a petition for writ of habeas

---

[7] Further, it is interesting to note that following the filing of Defendants' opposition brief with regard to this motion, Osvaldo submitted what appears to be declarations of several inmates who are housed at different prisons.  (Doc. 51.)

corpus on the basis the SMU confinement is not a disciplinary sanction and does not raise a viable claim for habeas relief.  See Stotts v. Dodrill, Civil No. 3:03-CV-1921, slip op. (M.D. Pa. April 19, 2004)(Munley, J.).  Defendants further support their argument by pointing to two civil rights cases filed pursuant to Bivens wherein this court found that a liberty interest does not arise from the Due Process Clause with regard to placement into the SMU, that placement in said unit was not punitive in nature and that the due process hearing required prior to placement in a "control unit" is not required prior to placement in the SMU.  See Stotts, et al. v. Federal Bureau of Prisons, et al., Civil No. 3:CV-04-0043, slip op. at 8-9 (M.D. Pa. Feb. 7, 2005) (Munley, J.); Johnson v. Dodrill, Civil NO. 3:04-CV-0068 (M.D. Pa. March 18, 2004) (Kosik, J.).  Based on the foregoing, Defendants maintain that Osvaldo fails to state a due process claim.

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal of a claim or claims for "failure to state a claim upon which relief can be granted. . . ."  In evaluating whether a claim is subject to dismissal, the court must accept all material allegations of the complaint as true and construe all inferences in the light most favorable to the Plaintiff.  See Mariana v. Fisher, 338 F.3d 189, 195 (3d Cir. 2003). A complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 44-46 (1957); see

11

also <u>Lum v. Bank of America</u>, 361 F.3d 217, 223 (3d Cir. 2004).  A litigant should be granted leave to amend, but not if amendment would be inequitable or futile.  <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004).

The court will not grant Defendants' motion to dismiss on the basis of failure to set forth sufficient personal involvement on behalf of the named Defendants with regard to the claims alleged.  In construing Osvaldo's complaint liberally as the court must in <u>pro se</u> prisoner cases, <u>see</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972), he appears to allege that the Regional Director actually ordered his transfer into the SMU, and that the other Defendants approved his transfer and ordered no due process hearing.

The court, agrees, however, that Osvaldo has failed to state a procedural due process claim.  This court has held that an inmate's placement in the SMU does not implicate his due process rights.  A due process liberty interest "in avoiding particular conditions of confinement may arise from state policies or regulations." <u>Francis v. Dodrill</u>, 2005 WL 2216582, *3 (M.D. Pa. Sept. 12, 2005), citing <u>Wilkinson v. Austin</u>, ___ U.S. ___, ___, 125 S.Ct. 2384, 2393, 162 L.Ed.2d 174 (2005).  The Due Process Clause protects a prisoner's right to "freedom from restraint, which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship in relation to the ordinary incidents of prison life. <u>Wilkinson</u> at 2394

(quoting <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995)).

In the <u>Francis</u> opinion, we cited to <u>Wilkinson</u>, where the Supreme Court applied the <u>Sandin</u> test and found that the plaintiff's due process rights were implicated when he was placed in a program where:

> almost all human contact is prohibited, even to the point that conversation is not permitted from cell to cell; the light, though it may be dimmed, is on for 24 hours; exercise is for 1 hour per day, but only in a small indoor room ....
> [P]lacement ... is indefinite and, after an initial 30 day review, is reviewed just annually ....[P]lacement disqualifies an otherwise eligible inmate for parole consideration.

<u>Id</u>. at 2394-95.  The <u>Wilkinson</u> Court found that these harsh conditions "give rise to a liberty interest in their avoidance."  <u>Id</u>. at 2395.

In <u>Francis</u>, this court also discussed  <u>Fraise v. Terhune</u>, 283 F.3d 506 (3d Cir. 2002), wherein the Third Circuit Court of Appeals applied the <u>Sandin</u> test and found that avoiding placement in the Security Threat Group Management Unit (STGMU) in the New Jersey prison system is not a protected liberty interest.  The inmates placed in this unit were those considered a security threat due to their affiliation with certain prison groups.  The inmates in this unit remain in maximum security custody until they successfully complete a multi-step behavioral modification program.  Such a unit is similar to the SMU unit at issue in the instant case.   The Third Circuit found that despite additional restrictions, no due process concerns arise in avoiding placement in this unit.  <u>Id</u>. at 511.

In applying the above precedent, this court found that the conditions in the SMU do not remotely approach the severity of the conditions Wilkinson found to give rise to a protected liberty interest, and were more comparable to those conditions in cases such as Sandin and Fraise which found no protected liberty interest.  The SMU program is not punitive, but rather designed to teach inmates about self-discipline, values and how to coexist with other inmates.  Inmates have one hour a day recreation out of their cell.  The conditions in the SMU were found to be comparable to those in other areas of the prison.

Taking all of Osvaldo's allegations as true in both his complaint and the appendix thereto, the only allegations he sets forth are that he failed to receive a hearing prior to his placement in the SMU, Defendants failed to provide him with copies of his "transfer approval" papers, he is basically on lockdown status in the SMU with the exception of one (1) hour a day for recreation and has restricted access to the commissary.   While Osvaldo clearly would prefer to be housed in another area of the prison, his preference is not a liberty interest protected by the Due Process Clause.  The exhibits to the complaint demonstrate that his placement in the SMU was based upon a lengthy disciplinary history, his having held leadership positions within a BOP-recognized prison gang and his inability to function and remain in the general population at USP-Lewisburg.  The complaint further reveals that Osvaldo had completed all disciplinary sanctions prior to his transfer to the SMU program in

14

April of 2004.  (Doc. 1, 11/7/03 Regional Office Response to grievance; 10/23/03 &

3/1/04 Warden Responses to grievances.)  His due process concerns are centered

around the failure to have a hearing before placement and his belief that he is in a

punitive, disciplinary unit, which is not the case.  Further, the quantitative loss of any

privileges enjoyed prior to Osvaldo's disciplinary segregation and following in the

SMU does not create an "atypical deprivation" necessary to implicate a liberty

interest triggering due process protections.  See Holbrook v. Walters, et al., Civil No.

3:CV-03-0033 slip op. at *16 (M.D. Pa. Feb. 26, 2004) (Vanaskie, C.J.).  Further,

taking Osvaldo's few allegations regarding the conditions within the SMU as true,

while more restrictive than general population, they do not create an inference that he

is subjected to atypical and significant hardship as defined in Sandin.  Further, the

fact that he may have only one hour of recreation outside of his cell a day and limited

access to the commissary, do not indicate these conditions are significantly more

restrictive than those imposed upon other inmates housed in such areas of the prison

as solitary confinement or protective custody.   Accordingly, Defendants' motion to

dismiss will be granted with regard to the due process claims.

Unlike Defendants, the court also reads Osvaldo's complaint and attachments

thereto to allege a claim under the Eighth Amendment.  Osvaldo specifically alleges

that his confinement in the SMU subjects him to cruel and unusual punishment in

violation of the Eighth Amendment.  For instance, he claims that because he had

already completed the disciplinary sanction imposed by the Disciplinary Hearing

Officer with regard to his latest incident report, he was subjected to cruel and unusual

punishment when transferred to the SMU for further disciplinary time.  Further, he

alleges that the SMU's lockdown condition and restricted access to the commissary

subjects him to cruel and unusual punishment.

The Eighth Amendment prohibition against cruel and unusual punishment

demands that prison officials do not house inmates under conditions that deprive

them of one or more basic human needs, such as the basic human need for reasonable

safety, adequate physical space, and the need for some degree of ventilation and fresh

air.  Helling v. McKinney, 509 U.S. 25, 32 (1993).  However, the Eighth Amendment

does not mandate that prisons be free of discomfort.  Hudson v. McMillian, 503 U.S.

1, 9 (1992).  "No static test determines whether conditions of confinement are 'cruel

and unusual.'  These terms must 'draw [their] meaning from the evolving standards of

decency that mark the progress of a maturing society.'"  Tillery v. Owens, 719 F.

Supp. 1256, 1262 (W.D. Pa. 1989) (citing Rhodes v. Chapman, 452 U.S. 337, 346

(1981)).  Conditions that cannot be said to be cruel and unusual under contemporary

standards are not unconstitutional.  Rhodes, 452 U.S. at 348.

To establish an Eighth Amendment claim, Osvaldo must show that the

conditions of his confinement pose "a substantial risk of serious harm" to his health

or safety.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  In reviewing this type of

claim, the courts have stressed the duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" as critical to a finding of cruel and inhumane treatment.  Moreover, the focus must be on the deprivation of a particular basic necessity.  As explained in <u>Wilson v. Seiter</u>, 501 U.S. 294, 304-05 (1991):

> some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise --for example, a low cell temperature at night combined with a failure to issue blankets.  To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.

In addition to showing conditions that pose a significant risk of serious harm, the inmate must show that the person or persons responsible for the conditions of confinement acted with "a sufficiently culpable state of mind."  <u>Wilson</u>, 501 U.S. at 298.  As described by the Supreme Court in <u>Farmer</u>, the standard for determining deliberate indifference in a conditions of confinement case is whether a prison official knew of and disregarded an excessive risk to an inmates's health or safety.  <u>Farmer</u>, 511 U.S. at 837.  The Court added that "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of harm."  <u>Id</u>. at 842.

While Defendants do not address the Eighth Amendment claims raised by

Osvaldo, a district court has the ability to <u>sua</u> <u>sponte</u> dismiss a prisoner case pursuant to the screening provision of 28 U.S.C. § 1915A if it determines that the complaint "fails to state a claim on which relief may be granted." In applying this statutory requirement here, a court employs the motion to dismiss standard set forth above under Fed. R. Civ. P. 12(b)(6). Thus, the truth of Osvaldo's factual allegations are assumed. The court must decide "whether under any reasonable reading of the pleadings, plaintiff may be entitled to relief." <u>Simon v. Cebrick</u>, 53 F.3d 17, 19 (3d Cir. 1995).

To the extent Osvaldo sets forth Eighth Amendment claims, the court finds that his complaint fails to state a claim for the following reasons. First, with regard to his contention that he continued to serve his disciplinary sanction following his transfer to the SMU, his claim is without merit based upon Osvaldo's own attachments to his complaint. The responses to his grievances clearly reveal that his disciplinary time was completed prior to any transfer to the SMU, and that the transfer to the SMU was for purposes of participating in a program which would assist Osvaldo in functioning within the general population due to his disciplinary history and association with prison gangs. Clearly, taking his allegations in the complaint as true, he fails to state an Eighth Amendment claim with regard to this allegation.

The only other Eighth Amendment allegation set forth is with regard to the lockdown status of the SMU and Osvaldo's release from his cell for only one (1) hour

per day for recreation and his limited access to the commissary.  Clearly, these conditions even taken together, do not rise to the deprivation of "minimal civilized measure of life's necessities" required to constitute cruel and unusual punishment under the principles set forth above. See Francis v. Dodrill, 2005 WL 2216582 at *5, n. 5.  Accordingly, this claim is also subject to dismissal.

An appropriate Order is attached.

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

DIAZ PABON OSVALDO,                     :
                                        :
            Plaintiff                   :
                                        :
        v.                              :    CIVIL NO. 3:CV-05-0155
                                        :
U.S.P. LEWISBURG WARDEN,                :    (Judge Kosik)
et al.,                                 :
                                        :
            Defendants                  :

# O R D E R

_____**NOW, THIS 28th DAY OF FEBRUARY, 2006,** in accordance with the

accompanying Memorandum, **IT IS HEREBY ORDERED THAT:**

1.    Plaintiff's Motion to Set Up Subpoena/Writ of Habeas Corpus Ad Testificandum (Doc. 25) is **denied**.

2.    Plaintiff's Motion for Preliminary Injunction (Doc. 39) is **denied**.

3.    Plaintiff's filing entitled "Motion Pursuant to Rule 56(f)" (Doc. 46) is **denied**.

4.    Defendants' Motion to Dismiss (Doc. 28) is **granted** with regard to the due process claims raised in the complaint.

5.    Plaintiff's Eighth Amendment claims are **dismissed** pursuant to 28 U.S.C. § 1915A.

6.    Plaintiff's "Motion for Order Compelling Discovery" (Doc. 45) is
      **denied as moot**.

7.    The Clerk of Court is directed to **close this case**.

8.    Any appeal from this Order will be deemed frivolous, without probable
      cause and not taken in good faith.


s/Edwin M. Kosik
United States District Judge